Cuff, J.
Petitioner has been the owner of two six-family apartment houses, No. 87-82 and No. 87-84 Parsons Boulevard, Queens Borough, New York City, since May 10, 1948. She planned to remodel the premises so that the first floors of the two buildings now occupied by four tenants would be changed into a store, which of necessity would destroy all living quarters on the first floor of each building. It seems that the front apartment in each building became vacant, but that two statutory-tenants still occupy the rear apartments.
In an endeavor to comply with Local Law No. 66 of 1947 of the City of New York, petitioner, on January 3, 1949, mailed to respondents her applications in quadruplicate for two eviction certificates (they were received by respondents January 7, 1949), as required by the rules and regulations promulgated by respondents. Still conforming to the ordinance (Local Laws, 1947, No. 66), petitioner submitted to the Department of Housing and Buildings her formal plans of alterations for the *1051 buildings on January 27, 1949, and the plans were that day approved by that department.
It seems to me that all proper preliminary steps had been taken by petitioner and that respondents substantially complied with procedural requirements, because petitioner and the tenants appeared and participated in a hearing before respondents on February 8,1949.
I consider that all the facts have been resolved and there remains only a question of law.
Respondents based their decision upon an interpretation of Local Law No. 66, which interpretation led to a denial of the relief which the applicant sought.
Search for the intent of the Legislature must be resorted to. This enactment (amending the Administrative Code of New York City by adding § U41-7.0 [known as Local Law, No. 66]) is introduced by the following declaration: “It is hereby declared that a serious emergency exists in the city of New York by reason of the shortage of apartments.” Reading the entire enactment, one cannot but be impressed that the legislative intent was to reduce to a minimum evictions of tenants and preserve as far as possible the number of existing rentable units.
The provisions which bear upon this application, in their chronological order, commence with paragraph (3) of subdivision c of section U41-7.0. This provision defines when respondents shall issue a certificate of eviction as follows: “ Under the circumstances specified in subdivisions f and g of this section, the landlord seeks in good faith to recover possession of such apartment for the immediate purpose of substantially altering, remodeling, or demolishing such apartment or a building or structure containing the same and all of the conditions and requirements specified in such subdivisions f and g have been fully complied with. ’ ’ (Italics supplied.) That language means that a certificate of eviction shall issue, first, if the landlord in good faith seeks to substantially alter the apartment from which he would evict his tenant, and, second, if the “ circumstances ” specified in subdivisions f and g exist.
As good faith would be obvious and easily established, the issuance of the certificate of eviction hinges upon the strictures upon paragraph (3), (supra), as imposed by subdivisions f and g. Those two subdivisions will be considered: We find subdivision f under this heading: “Evictions, alterations, improvements, demolition and construction.” The text of the ■ subdivision follows: “ Notwithstanding any other provision of *1052 law, and except as otherwise provided in subdivision ‘ g ’ hereof, no plan or permit for the improvement, demolition, construction or alteration of any building or structure or any portion thereof containing an apartment or apartments shall be approved by any borough superintendent of the department of housing and buildings, if such alteration, improvement, demolition or construction will require the eviction of any tenant from an apartment, unless the borough superintendent shall find (1) that such alteration, improvement, demolition or construction is reasonably necessary to maintain the safety of such building or structure or (2) that such demolition is to be made for the purpose of constructing a new building or structure containing a greater number of apartments than were contained in the structure to be demolished or (3) that such alteration or improvement is for the purpose of subdividing an apartment containing not less than seven rooms occupied by less than one person per living room as defined by the Multiple Dwelling Law into a greater number of apartments. * # * ” (Italics supplied.) The remainder of that subdivision insures the tenant, temporarily evicted to allow the alterations, of the right to recapture his apartment after the safety alterations have been made or after the newly constructed apartment has been completed, at a rental to be fixed by respondents. Nothing in subdivision f authorizes evicting tenants to allow the landlord to remodel a part of a building by substituting a store for apartments. In fact, subdivision c, as modified by paragraph (3) of subdivision f, prohibits the issuance of a certificate of eviction (except while the work is in progress) for the purpose of altering, improving, demolishing or constructing a building of living apartments. This in spite of the fact that each subdivision (subd. c, par. [3]; subd. f) is headed “ evictions.”
Turning now to subdivision g to apply it to paragraph (3) of subdivision c, we find this language: “ Eviction; Demolition for the purpose of constructing other than housing accommodations. The commission may, upon application of a landlord, exempt from the operation of subdivision ‘ f ’ hereof the demolition of a building or structure containing apartments for the purpose of constructing other than housing accommodations,-if the commission finds that such demolition will not tend to hinder or defeat the purposes of this section, provided that such exemption shall be granted only upon such terms and conditions as will provide for the relocation of the tenants to other comparable dwelling accommodations, within the same borough, at rents not greater than the rents then being paid by such tenants ”. While *1053 that provision essays to grant authority to relieve paragraph (3) of subdivision c from the strictures grafted upon it by subdivision f, actually it makes no provision for evictions unless complete demolition of an entire building is planned. In other words, subdivision g offers no comfort to the owner who wants to do less than tear down his building.
It is contended by petitioner’s attorney that certain headings and provisions in Local Law No. 66 suggest that evictions were intended to be granted where the landlord, in good faith, sought to remodel his building to provide store space, without prejudice to the tenants for whom other living quarters must be found. The decision of respondents denying petitioner’s application suggests that the commission is impressed that the ordinance leaves something to be desired. The last sentence reads: “If this is a hiatus in the statute, the matter is not one for our consideration or correction, but rather for possible amendment to the governing law. ’ ’
Regardless of whether there is error or omission in the enactment (Local Law No. 66), the fact remains that the ordinance affirmatively forbids doing exactly that which petitioner seeks to do, viz., to evict some tenants from a building for the purpose of converting their space into stores, although the owner has found comfortable living quarters for those tenants nearby.
The application at bar is (1) to require respondents to serve upon the tenants petitioner’s applications for a certificate of eviction, (2) to require respondents to hold a hearing on petitioner’s said applications, and (3) to require respondents, if petitioner establishes her facts as set forth in her applications to respondents, to issue its certificate of eviction against the tenants named therein. (1) and (2) are academic because the tenants and petitioner attended a hearing provided by respondents. (3), which is in the nature of mandamus, is the controlling relief sought. Begardless of its form, I find that the law will not permit respondents or this court to grant the relief which petitioner has sought in this application as indicated in the foregoing , decision. Unfortunately, this motion must be and is denied.